[No. G037335. Fourth Dist., Div. Three. July 30, 2007.]

PHILIPSON & SIMON, Cross-complainant and Respondent, v. LORI GULSVIG, Cross-defendant and Appellant.

COUNSEL

Law Offices of Briggs & Alexander, Brian Charles Ostler, Sr., and William L. Smith, Jr., for Cross-defendant and Appellant.

Grannan Law Office and Patrick J. Grannan for Cross-complainant and Respondent.

OPINION

**BEDSWORTH, J.**—Sometimes lawyers seem to forget that, in their professional capacities, they owe a duty of loyalty to their clients—even when they no longer like them. And when a lawyer becomes convinced his client is on the wrong side of a particular legal dispute, the lawyer generally has the option of staying out of that dispute. He does not, however, have the option of switching sides and suing a client on behalf of a third party, alleging that the very settlement he obtained for the client in prior litigation actually belongs to the third party. And when the client objects to such an attempt, and sues the lawyer for breach of his professional obligations, the lawyer

probably shouldn't cross-complain back against her, apparently outraged that she has dragged him into the controversy and caused him to expend money to defend himself.

But all of that is just background, because the issue in this case is whether the lawyer's (technically a law firm's) second amended cross-complaint against its client should have been stricken, in whole or in part, because it constituted a SLAPP (strategic lawsuit against public participation) action, and because the law firm failed to serve the client with mandatory notice of her right to arbitrate its fee claims under the Mandatory Fee Arbitration Act (MFAA). (Bus. & Prof. Code, § 6200 et seq.) We are not here to evaluate either the law firm's subjective motivations, or whether its own conduct may have inflicted more harm on itself than anything its former client might have done. The only issues to be determined are whether the cross-complaint is covered under the anti-SLAPP statute, and if so, whether it states a claim that has a probability of success or was subject to dismissal under the MFAA.

Focusing on those relevant issues, we conclude that each of the law firm's causes of action falls within the protection of the anti-SLAPP statute, because each of them is based substantially upon a client's petitioning activity—first her initiation of a fee arbitration proceeding under the MFAA, and then her initiation of a cross-complaint against the law firm in this action.

Moreover, the law firm has failed to demonstrate a probability of success on its causes of action for fraud and negligent misrepresentation. The facts it has pleaded in support of these claims are not merely insufficient to constitute a cause of action, they wholly preclude any claim of "justifiable" reliance. Moreover, those claims seek to recover damages not available in this case. Consequently, we conclude the trial court erred in denying the anti-SLAPP motion with respect to those claims.

The law firm's breach of contract and breach of covenant claims suffer from a different problem. Those claims, which seek fees allegedly earned in representing the client, are subject to dismissal unless the firm gives the client notice of her right to arbitrate those fee claims under the MFAA prior to proceeding in court. And while the firm claims it served its client with the required notice, it offered no admissible evidence to support that point. Moreover, the notice it claims to have sent would have been inadequate in any case. The firm's second amended cross-complaint contained greatly expanded claims, relating not only to the single fee dispute initially alleged by the law firm (and mentioned in its putative notice), but also additional fees allegedly earned pursuant to two *other* fee agreements. The law firm made no showing at all that it had provided arbitration notices with respect to those other fees. The purported notice was, as a consequence, inadequate to fulfill the firm's obligation under the statute.

However, that flaw is not fatal to these causes of action, because (1) the client waived her right to enforce the MFAA when she previously filed her own cross-complaint against the law firm in court; and (2) the decision to dismiss for lack of a proper arbitration notice is discretionary in any case. Because the client cites no other reasons why the court erred in concluding these claims were "viable," we conclude the court properly denied the anti-SLAPP motion with respect to them.

We therefore reverse the court's order denying the client's anti-SLAPP motion, and remand the case with directions to grant the motion as to the law firm's causes of action for fraud and negligent misrepresentation. We also direct the court to reconsider the issue of attorney fees under the anti-SLAPP statute in light of that changed circumstance.

* * *

According to the various pleadings in this case, here is what occurred: Lori Gulsvig was a shareholder, officer and employee of California Shirt Sales, Inc., a California Corporation (CSS California.) In March of 1997, CSS California entered into an agreement with Tultex, Inc., pursuant to which CSS California sold assets to Tultex. Tultex formed a Virginia corporation, also called California Shirt Sales, Inc. (CSS Virginia), for the purpose of owning those assets.

Prior to the asset sale, CSS California had an account receivable, owed by a company called Color Spot, and hired respondent, the law firm of Philipson & Simon Philopson, to collect it. Although Philipson was able to obtain a judgment against Color Spot on behalf of CSS California, that judgment was later determined to be uncollectible. According to Gulsvig, CSS California receivables that had been "charged off" (including the Color Spot judgment) at the time of the sale to Tultex were not included in the sale, and remained the property of CSS California.

After the sale, Gulsvig became an employee of Tultex for a period of time. Similarly, Philipson was engaged to collect accounts on behalf of Tultex. In late 1999 or early 2000, Gulsvig left her employment with Tultex and formed a new business, Sundog International, Inc. She retained Philipson to perform legal services on behalf of herself and Sundog. Among those services were renewed efforts to collect the Color Spot judgment.

Approximately two years later, in October of 2001, Philipson obtained a settlement of the Color Spot judgment. The total amount to be paid by Color Spot was $85,000, of which $15,000 was designated as "attorney fees." Philipson remitted $70,000 of the funds to Gulsvig, and made clear its

intention to keep the remaining $15,000 for itself. Gulsvig contested Philipson's right to the $15,000, and filed a request for fee arbitration with the Orange County Bar Association.

After Gulsvig filed her arbitration request, Philipson informed her that it questioned her right to retain any part of the settlement funds, and further that Campbell Advisors, P.C. (the plaintiff in this case), had asserted its own claim to the funds as successor in interest to Tultex. In January of 2003, Philipson requested that Gulsvig remit back to it the $70,000 she had already received from the Color Spot settlement, and offered to retain those funds in its trust account pending a determination of which party was entitled to them.

Philipson also filed a formal response to Gulsvig's arbitration request, in which it argued that the fee dispute could not be decided until after a "threshold determination as to which company or person is entitled to the proceeds from the Color Spot Settlement."

When Gulsvig did not accede to Philipson's request that she return the settlement funds she had already received, it threatened her with a lawsuit, and even provided her with a proposed complaint purportedly drafted—and signed—by one Patrick J. Grannan, Esq., of the Grannan Law Office. The complaint accused Gulsvig of breach of contract, conversion and fraud, and sought damages *stemming from her retention of settlement funds which allegedly belonged to Campbell.* In the letter which accompanied that threatened complaint, Philipson Attorney Jeffrey Simon (the same attorney who had done the bulk of the work for Gulsvig) also made the frankly startling suggestion to Gulsvig's new counsel that he had had "several discussions with Mr. Grannan and may be in a position *to mediate the dispute* prior to litigation *and without incurring significant costs and attorneys fees.*" In essence, Simon admitted discussing—without consent—his prior client's interests with the attorney now representing a party preparing to sue her, and offered to act as a neutral in this dispute.

Approximately three months later, Philipson itself (through Jeffrey Simon), *then acting as counsel for Campbell,* filed what appears to be a word-for-word copy of the Grannan complaint against Gulsvig.

Gulsvig responded with a demurrer and a motion to disqualify Philipson from further representing Campbell.[1] Gulsvig also filed a cross-complaint against Philipson, alleging causes of action for breach of fiduciary duty, negligence, breach of contract and conversion. In substance, Gulsvig alleged

---

[1] Apparently, Philipson agreed to withdraw as Campbell's counsel of record prior to the hearing on Gulsvig's motion.

that Philipson had breached its fiduciary duty to her, and acted negligently, by failing to ascertain who owned the Color Spot judgment prior to collecting it on her behalf, and then acting on behalf of Campbell in attempting to retrieve it from her. Gulsvig also alleged that Philipson breached its contract with her, and committed a conversion, by retaining $15,000 of the proceeds of the Color Spot judgment.

Philipson—represented by the same Patrick Grannan who purportedly drafted (but did not file) the complaint against Gulsvig for Campbell—then filed its own cross-complaint against Gulsvig. It is the second amended version of that cross-complaint that is at issue in this appeal.

In the initial version, Philipson asserted causes of action for breach of contract, breach of the covenant of good faith and fair dealing, fraud and negligent misrepresentation. It sought monetary damages, as well as indemnity, contribution and declaratory relief. Philipson alleged that while Gulsvig had initially represented, during her tenure with Tultex, that Tultex owned the Color Spot receivable, she later claimed to own the receivable personally. Philipson purportedly relied upon Gulsvig's *latter* representation in undertaking its renewed efforts to collect the judgment and in paying funds from the settlement to her. Subsequent to that payment, however, Philipson asserted it was informed by Campbell that the Color Spot judgment had been included in the assets sold to Tultex. Without actually asserting that Campbell's ownership claim was the correct one, Philipson alleged that Gulsvig had breached her agreement with it by "not being truthful with [it], and not keeping [it] informed of developments . . . ."

Philipson further alleged that as a result of Gulsvig's conduct, it had been induced to wrongly distribute the settlement funds to her. It also asserted that "[it] has been brought into this action as a result of [Gulsvig's] actions and conduct and faces possible exposure, attorneys fees and costs. If [Philipson] had known of the falsity of the representations made by [Gulsvig, it] would not have performed as alleged and should not have been sued in this action."

Philipson's indemnity, contribution and declaratory relief claims sought—rather confusingly—a determination that Gulsvig was required to *indemnify it* against any damages it might be held liable to *pay her* as a result of the cross-complaint she had already filed against it.[2]

---

[2] Giving Philipson the benefit of the doubt, we should note there were theoretical "doe" cross-defendants named along with Gulsvig. Its claims for indemnity, contribution and declaratory relief could possibly be stated against those unidentified third parties. As against Gulsvig herself, however, they make no sense, amounting to "If the court determines I owe you money, then you owe me the money I owe you." This would make for an odd and counterintuitive game of monetary "hot potato."

Gulsvig demurred to the cross-complaint, and the court sustained the demurrer with leave to amend. The court's order stated that "as to all causes of action . . . [Philipson] has not adequately alleged any damages that flow from the alleged breaches and tortious conduct. Further, as to the 5th and 6th causes of action there is no 3rd party alleged that would rise to causes of action for indemnity or contribution."

Philipson's first amended cross-complaint also alleged causes of action for breach of contract, breach of the covenant of good faith and fair dealing, fraud and negligent misrepresentation, but no longer included any claims for indemnity, contribution or declaratory relief. Its allegations regarding damages were expanded to include not only "attorneys fees and costs of defending the action brought against it by Gulsvig which would not have been incurred but for the actions and conduct of Gulsvig as set forth herein," but also its *potential exposure or liability* for monies distributed as a result of Gulsvig's conduct . . . ." (Italics added.)

Rather than again demurring, Gulsvig moved for judgment on Philipson's first amended cross-complaint. She argued Philipson had still not alleged any cognizable damages, and had failed to plead any facts demonstrating it had reasonably relied on any representation she had made.[3] The court granted the motion, but again gave Philipson leave to amend.

Philipson filed its second amended cross-complaint in January of 2006. In that version, its allegations in support of its claims for breach of contract and breach of the covenant of good faith and fair dealing were substantially expanded. In addition to the prior allegations questioning the truthfulness of Gulsvig's claimed ownership of the Color Spot judgment, Philipson alleged that Gulsvig had committed no less than three distinct breaches of three different retainer agreements.

First, Gulsvig was alleged to have breached her initial retainer agreement, relating to the Color Spot matter, by refusing to allow Philipson to keep the $15,000 in disputed attorney fees—the very same fees it was otherwise claiming neither she nor it had any right to because they belonged to Campbell. Philipson also alleged Gulsvig breached a separate retainer agreement with it by refusing to pay contingent fees incurred in connection with a personal injury action. And finally, Gulsvig was alleged to have also breached a third retainer agreement, by failing to pay hourly fees. Philipson sought damages in the distinct amounts it claimed were owed to it under each of the

---

[3] As Gulsvig noted, Philipson's allegations were that she had initially told it the Color Spot account belonged to Tultex (which was also its client), but then later claimed the opposite—that the account belonged to her personally. Apparently, that "about-face" did not raise any red flags for the lawyers.

retainer agreements—$15,000 under the initial Color Spot agreement; $19,800 under the personal injury contingent agreement; and $4,253.50 under the final, hourly agreement.

Philipson's revised fraud and misrepresentation claims incorporated the allegations of the breach of contract claim by reference, and continued to rely upon the assertion that Gulsvig had misrepresented her entitlement to the Color Spot judgment. In that regard, Philipson alleged Gulsvig "used [it] and its law practice as an instrumentality to perpetrate frauds." In addition, it added allegations Gulsvig had wrongfully induced it to forgo the fees it would have been entitled to under the parties' contingency fee agreement, by promising she would pay them all sums collected as attorney fees in collection cases. Philipson alleged that as a consequence of Gulsvig's alleged frauds, it was convinced to "(a) waive fees for the personal injury claim and (b) distribute monies to [Gulsvig] and to allegedly wrongly take monies for which [Gulsvig] was not entitled to take [sic]." Moreover, it has been "brought into this action . . . and faces possible exposure, attorneys fees and costs." As to damages, it claimed to have suffered "significant injuries and damages and other economic and non-economic damages in an amount to be determined at trial."

Gulsvig responded to this second amended cross-complaint by filing a combined motion to strike it, and each of the causes of action contained in it, as a SLAPP action, and to strike it pursuant to Code of Civil Procedure section 436.[4] She made several arguments. First, she asserted the causes of action in the second amended cross-complaint were each based upon her conduct of first pursuing fee arbitration and then filing her cross-complaint against Philipson—that this was the conduct by which she allegedly breached her fee obligation in the Color Spot case, and which also caused the firm to be "brought into this action" and suffer consequent damages. Such activity constitutes "petitioning" and is thus protected by the anti-SLAPP law.

Gulsvig asserted that Philipson's claims for fraud and misrepresentation were insufficient because they lacked the required specificity to support a fraud cause of action. She further argued that none of the causes of action alleged by Philipson had merit, in any event, because Philipson had not served her with the arbitration notice required by Business and Professions Code section 6201 prior to suing her for fees, and thus that the second amended cross-complaint should be stricken.

Philipson opposed the motion, accusing Gulsvig of "lying" about the arbitration notice, which Jeffrey Simon declared the firm (rather than he

---

[4] Philipson argues, incorrectly, that Gulsvig's motion attacked only the cross-complaint as a whole, and not the individual causes of action therein. Her notice of motion clearly requests that the cross-complaint be stricken "in whole or in part."

personally) had served on her in July of 2002. That notice, which includes no written proof of service, purportedly informed Gulsvig the law firm was seeking "no less than $15,000, plus costs and attorneys fees per agreement" in the matter of "Color Spot, among others." Simon additionally declared that Gulsvig's attorney had written him a letter in January of 2003 (six months after the notice) requesting a "detailed written response outlining your position with respect to the $15,000 . . ." and confirming that Simon had indicated he "would be amenable to" arbitration.

Philipson also argued its second amended cross-complaint did not arise from Gulsvig's petitioning activity; asserting that the gravamen of its second amended cross-complaint was rather Gulsvig's alleged lies and nonpayment of fees.

The trial court denied the motion, reasoning Gulsvig had not met her burden of establishing the second amended cross-complaint arose out of protected activity, and concluding it stated a viable cause of action for breach of contract which might offset the claims asserted by Gulsvig in her own cross-complaint.

## I

Our review of an order denying a motion to strike a complaint as a SLAPP suit is de novo. (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 999 [113 Cal.Rptr.2d 625] ["Whether [Code of Civil Procedure] section 425.16 applies and whether the plaintiff has shown a probability of prevailing are both reviewed independently on appeal."]; *Jespersen v. Zubiate-Beauchamp* (2003) 114 Cal.App.4th 624, 629 [7 Cal.Rptr.3d 715].)

Code of Civil Procedure[5] section 425.16, subdivision (b)(1), requires a two-step process for determining whether a defendant's section 425.16 motion to strike should be granted. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685].)

Then, if the court finds that such a showing has been made, the burden shifts to the plaintiff to demonstrate "there is a probability that the plaintiff

---

[5] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

will prevail on the claim." (§ 425.16, subd. (b)(1); see *DuPont Merck Pharmaceutical Co. v. Superior Court* (2000) 78 Cal.App.4th 562, 567–568 [92 Cal.Rptr.2d 755].)

Consequently, in this case, Gulsvig had the initial burden of establishing the causes of action against her arose out of an "act . . . in furtherance of [her] right of petition or free speech under the United States or California Constitution in connection with a public issue . . . ." (§ 425.16, subd. (b)(1).)

Section 425.16, subdivision (e), specifically defines an " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' " to include "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) *any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law*; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e), italics added.)

■ In this case, Gulsvig argued that Philipson's entire cross-complaint arose out of her act of petitioning; i.e., her pursuit of first an arbitration action and then a cross-complaint, against them. As such, she contends it would qualify for protection under the anti-SLAPP law. "In deciding whether the 'arising from' requirement is met, a court considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' (§ 425.16, subd. (b).)" (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 79 [124 Cal.Rptr.2d 519, 52 P.3d 695].)

■ We begin our de novo review with the proposition that filing a lawsuit does qualify as "petitioning" under the anti-SLAPP law. (*Chavez v. Mendoza* (2001) 94 Cal.App.4th 1083, 1087 [114 Cal.Rptr.2d 825].) Further, we have little trouble concluding that the initiation of a State Bar-sponsored fee arbitration proceeding is likewise covered; after all, it is an official proceeding established by statute to address a particular type of dispute. (See *ComputerXpress, Inc. v. Jackson, supra*, 93 Cal.App.4th 993, 1003 [filing of complaint with the federal Securities and Exchange Commission is protected activity].)

■ Next, we note that "where a cause of action alleges both protected and unprotected activity, the cause of action will be subject to section 425.16

unless the protected conduct is 'merely incidental' to the unprotected conduct [citations] . . . ." (*Mann v. Quality Old Time Service, Inc.* (2004) 120 Cal.App.4th 90, 103 [15 Cal.Rptr.3d 215]; see also *Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2005) 129 Cal.App.4th 1228, 1245 [29 Cal.Rptr.3d 521].) As explained in *Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294, 308 [106 Cal.Rptr.2d 906], "a plaintiff cannot frustrate the purposes of the SLAPP statute through a pleading tactic of combining allegations of protected and nonprotected activity under the label of one 'cause of action.' "

Here, Philipson alleges as part of its fraud and negligent misrepresentation causes of action, that as a result of Gulsvig's misepresentations, it had been "sued in this action," and was facing "possible exposure, attorneys fees and costs." It further alleges that had it known of the falsity of Gulsvig's representations, it "should not have been sued in this action." Of course, the only one who has sued Philipson is Gulsvig herself, and thus these damage allegations are based on Gulsvig's own petitioning activity. Moreover, these allegations, which have been included in every version of Philipson's cross-complaint, cannot be characterized as merely "incidental." Indeed, they can be fairly described as constituting the "gist" of Philipson's fraud and misrepresentation claims included in its cross-complaint, since they reflect the only specific damages alleged.

The fact Philipson has since broadened its fraud and misrepresentation claims to include allegations relating to other retainer agreements between itself and Gulsvig—but without identifying any distinct fraud damages, or abandoning its original claims—suggests it is merely attempting to avoid operation of the anti-SLAPP statute by "combining allegations of protected and nonprotected activity under the label of one 'cause of action.' " (*Fox Searchlight Pictures, Inc. v. Paladino, supra*, 89 Cal.App.4th at p. 308.) Consequently, we conclude that Philipson's fraud and misrepresentation causes of action fall within the protection of the anti-SLAPP law.

The breach of contract and breach of covenant causes of action contained in Philipson's second amended complaint, by contrast to the fraud claims, do not mention any specific damage claims based upon Philipson's forced participation in litigation. Instead, each merely alleges that as a proximate result of Gulsvig's breaches, including "failing and refusing to pay fees due . . . of approximately $39,053.50 [pursuant to the three agreements]" it has sustained damages "in an amount to be determined at trial but not less than $39,053.50."

However, Gulsvig points out that if we read between the lines, and compare the allegations of the second amended cross-complaint with the allegations of Philipson's earlier cross-complaints, we will be forced to the recognition Philipson has based its claim, at least in part, on her protected activity. Her point is well taken.

Gulsvig relies on two things. First, she notes that in addition to alleging she "failed and refused" to pay the $39,000 in fees owed under the three retainer agreements, Philipson's second amended cross-complaint repeats the allegations of breach contained in its first amended complaint; i.e., Gulsvig is alleged to have breached her contract(s) by "not being truthful with P&S, not cooperating with P&S and not keeping P&S informed of developments pertinent to the . . . sale of Tultex in 1997." Moreover, in that first amended complaint, Philipson specifically alleged that *those particular breaches* had caused it to sustain "significant damages, including but not limited to the attorneys fees and costs of defending the action brought against it by Gulsvig. . . ."

Consequently, based upon the similarity of those allegations, Gulsvig asserts that the breach of contract and breach of covenant claims in Philipson's second amended complaint must be read as continuing to allege damages based upon her pursuit of litigation. In other words, Gulsvig urges us to conclude Philipson's request for contract damages "in an amount to be determined at trial but not less than $39,053.50" should be read as seeking "$39,053.50, plus the expense incurred in defending itself against Gulsvig's claims."

Gulsvig's second point is that Philipson's allegation she breached her initial fee contract by "refusing to pay Philipson & Simon the $15,000 in . . . fees," must be read as a complaint about her initiation of the State Bar arbitration proceeding—because that is the *manner in which she manifested* her refusal. Specifically, Gulsvig points out that this is not a case in which she was ever in possession of the disputed $15,000. If she were, she could theoretically have breached her contract by simply refusing to pay it over to Philipson. That would have been nonpetitioning activity. But because Philipson was at all times in possession of the disputed funds, her alleged "refusal to pay" required her to take some affirmative steps to dispute Philipson's right to retain those funds. And she did that by initiating the State Bar arbitration.

█ We are required by statute to interpret the anti-SLAPP law "broadly." (§ 425.16, subd. (a).) Doing so in this case compels us to agree with Gulsvig.

The allegations of Philipson's prior cross-complaints—even those which have been omitted from its latest version, may properly be considered in interpreting that version. ▮ " '[A] plaintiff may not discard factual allegations of a prior complaint, or avoid them by contradictory averments, in a superseding, amended pleading.' " (*Continental Ins. Co. v. Lexington Ins. Co.* (1997) 55 Cal.App.4th 637, 646 [64 Cal.Rptr.2d 116], quoting *California Dental Assn. v. California Dental Hygienists' Assn.* (1990) 222 Cal.App.3d 49, 53, fn. 1 [271 Cal.Rptr. 410].)

Here, it appears Philipson has attempted to disguise its claim that Gulsvig's alleged breach of contract included her conduct of initiating an arbitration (and litigation) regarding the disputed $15,000 fee, by simply omitting from its second amended cross-complaint any direct reference to having been damaged as a result of being dragged into this dispute. But that was the *specific damage* it previously alleged was caused by the very same alleged breaches it has carried forward into this current cross-complaint. Moreover, as Gulsvig points out, because she never had possession of the disputed $15,000 fee, she could not "refuse" to pay it other than by taking affirmative steps to dispute Philipson's *retention* of that fee. She did that by initiating first the arbitration, and then her own cross-complaint in this case. Under these circumstances, we must concur with Gulsvig that the breach of contract and breach of covenant claims in Philipson's second amended cross-complaint are based, at least in part, on Gulsvig's petitioning activity.

Moreover, despite the fact Philipson added significant additional allegations into the second amended version of these causes of action—including alleged breaches of two other retainer agreements, we cannot say the allegations relating to the initial Color Spot fee dispute were incidental. They are clearly at the heart of this case. Consequently, we conclude Gulsvig sustained her burden of demonstrating that all four of the causes of action contained in Philipson's second amended cross-complaint against Gulsvig are subject to the anti-SLAPP law.

## II

▮ We next turn to the issue of whether Philipson sustained its burden of demonstrating a probability of success on the merits of these causes of action. According to our Supreme Court in *Briggs v. Eden Council for Hope &*

*Opportunity* (1999) 19 Cal.4th 1106, 1123 [81 Cal.Rptr.2d 471, 969 P.2d 564], this means it must demonstrate it has " 'stated and substantiated a legally sufficient claim.' " (Quoting *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 412 [58 Cal.Rptr.2d 875, 926 P.2d 1061].)

■ We first consider Philipson's fraud and negligent misrepresentation causes of action and consider whether it has "stated . . . a legally sufficient claim." Fraud is required to be pleaded with specificity. "The pleading of fraud . . . is also the last remaining habitat of the common law notion that a complaint should be sufficiently specific that the court can weed out nonmeritorious actions on the basis of the pleadings. Thus the pleading should be sufficient ' "to enable the court to determine whether, on the facts pleaded, there is any foundation, prima facie at least, for the charge of fraud. [Citations.]' " (*Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 216–217 [197 Cal.Rptr. 783, 673 P.2d 660], quoting *Scafidi v. Western Loan & Bldg. Co.* (1946) 72 Cal.App.2d 550, 553 [165 P.2d 260].)

In this case, unfortunately, Philipson's pleading is, at best, turbid. It relies upon the technique of incorporating—wholesale—the allegations of each cause of action into the following one. Thus, the causes of action styled fraud and negligent misrepresentation include the entire causes of action for breach of contract and breach of the covenant. However, when we separate the wheat from the chaff, the only specific allegations of intentional or negligent falsity relate to (1) Gulsvig's claim that she, rather than Tultex, retained the rights to collect the Color Spot judgment; and (2) her promise that if Philipson agreed to waive its contingency fee in her personal injury case, Gulsvig and Sundog would pay it "all sums collected as 'attorney fees' in all collection cases, including collection of the Color Spot Judgment." The cause of action goes on: "In reliance upon the representation of [Gulsvig, Philipson] distributed monies to [Gulsvig] and paid [her] $70,000, while $15,000 remains in [Philipson's] attorney-client trust account. [Philipson] has been brought into this action as a result of [Gulsvig's] actions and conduct and faces possible exposure, attorneys fees and costs. If [Philipson] had known of the falsity of the representations made by [Gulsvig, it] would not have performed as alleged and should not have been sued in this action."

Thus, Philipson's fraud claim is actually limited to its involvement in the Color Spot collection matter, its right to be paid the "attorney fee" in that matter because of its reliance on Gulsvig's fraudulent promises, and the

damages allegedly suffered by it when Gulsvig's conduct caused it to be "brought into this action." When viewed in the context of Philipson's other factual allegations contained in the complaint, this claim is insufficient to state a cause of action for fraud.

 "The elements which must be pleaded to plead a fraud claim are '(a) misrepresentation (false representation, concealment or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.' " (*Agricultural Ins. Co. v. Superior Court* (1999) 70 Cal.App.4th 385, 402 [82 Cal.Rptr.2d 594], quoting 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 676, p. 778.) In this case, Philipson's fraud claim lacks any alleged facts which might demonstrate it justifiably relied on Gulsvig's allegedly fraudulent claim that she, and not Tultex, actually owned the Color Spot judgment. Reliance is "justifiable" only when "circumstances were such to make it reasonable for plaintiff to accept defendant's statements without an independent inquiry or investigation." (*Wilhelm v. Pray* (1986) 186 Cal.App.3d 1324, 1332 [231 Cal.Rptr. 355], italics omitted.)

What Philipson alleges here is that Gulsvig consistently represented to it, after the sale of CSS California to Tultex, *that Tultex owned the Color Spot receivable.* Specifically Philipson alleges that "[f]rom March of 1997 through October 21, 1999, Gulsvig represented that the judgment was to be collected by [Philipson] for Tultex under the fee agreement between [Philipson] and Tultex."

Then, according to Philipson, in October of 1999, Gulsvig suddenly informed it that she, rather than Tultex, owned the Color Spot judgment, and told Philipson to "now cease its efforts to collect the judgment for Tultex." She then retained Philipson to collect it for her instead, explaining that it had been one of the few accounts "specifically excluded from the sale [to Tultex] in 1997." Philipson alleges, in conclusory fashion, that it "reasonably relied" upon Gulsvig's self-serving claim, because at the time she made it, she was still employed by Tultex, and "it was believed that [she] was being truthful. . . ."

We cannot view this story, as told by Philipson in its own pleading, as demonstrating anything like "reasonable reliance." Philipson's role, as *Tultex's attorney,* simply does not allow it to unquestioningly abandon its professional obligations to that client, simply because an officer of the company (who has previously stated consistently that a particular asset

belongs to Tultex) suddenly claims that she has personally owned that asset *all along*. To be sure, Philipson's story might make some sense if it was claiming that Gulsvig had suddenly informed it that she *purchased* the asset from Tultex (and offered evidence to back that up). But that is not what Philipson claims. It says that Gulsvig told it one story for over two years— that its client Tultex owned the account—and then abruptly claimed the opposite; and that it *reasonably* believed her. This is exactly the sort of case in which we can " ' "determine whether, on the facts pleaded, there is any foundation, prima facie at least, for the charge of fraud." ' [Citations.]" (*Committee on Children's Television, Inc. v. General Foods Corp., supra*, 35 Cal.3d at pp. 216–217.) There is not.[6] Any reliance would have been unreasonable.

The second problem with Philipson's causes of action for fraud and negligent misrepresentation is that the only damages specifically alleged—the "possible exposure, attorneys fees and costs" associated with being "brought into this action" are not recoverable *in this action*. First of all, until Philipson is *actually* exposed to liability (toward a third party, not Gulsvig), such damage claims are not ripe or recoverable against Gulsvig. "Generally speaking, to be actionable, harm must constitute something more than ' "nominal damages, speculative harm, or the threat of future harm—not yet realized . . . ." ' " (*Buttram v. Owens-Corning Fiberglas Corp.* (1997) 16 Cal.4th 520, 531, fn. 4 [66 Cal.Rptr.2d 438, 941 P.2d 71], quoting *Larcher v. Wanless* (1976) 18 Cal.3d 646, 656, fn. 11 [135 Cal.Rptr. 75, 557 P.2d 507].) What's more, the costs and fees Philipson may be incurring by participating in this litigation are, in the absence of a fee-shifting agreement, not recoverable herein.[7] The traditional "American rule" is that each party to litigation must bear its own fees. (*Trope v. Katz* (1995) 11 Cal.4th 274, 278–279 [45 Cal.Rptr.2d 241, 902 P.2d 259].)

On this basis, we conclude Philipson has not upheld its burden of demonstrating a likelihood of success on its causes of action for fraud and negligent misrepresentation.

---

[6] We are not, of course, offering any opinion on what facts the evidence might ultimately establish in this case—only that the facts *alleged* by Philipson, if proved, would not state a cause of action for fraud against Gulsvig.

[7] Philipson's cross-complaint also suggests it has a right to recover fees under the terms of its retainer agreements, but the language it quotes applies only to actions "seek[ing] collection of [its] legal fees." There is nothing in that language which suggests a scope wide enough to cover fraud or another tort claim. (Cf. *Santisas v. Goodin* (1998) 17 Cal.4th 599, 607–608 [71 Cal.Rptr.2d 830, 951 P.2d 399], in which a fee clause governing "any litigation arising out of the execution of the agreement or the sale of the property" was deemed to "embrace[] all claims, both tort and breach of contract, in plaintiffs' complaint . . . .")

## III

Philipson's breach of contract and breach of covenant causes of action are problematic for a different reason. Business and Professions Code section 6201, subdivision (a), states in pertinent part "that an attorney shall forward a written notice to the client prior to or at the time of service of summons or claim in an action against the client, or prior to or at the commencement of any other proceeding against the client under a contract between attorney and client which provides for an alternative to arbitration under this article, for recovery of fees, costs, or both. The written notice shall be in the form that the board of governors prescribes, and shall include a statement of the client's right to arbitration under this article. *Failure to give this notice shall be a ground for the dismissal of the action or other proceeding.*" (Italics added.)

In this case, Philipson asserted it complied with the requirements of Business and Professions Code section 6201, by sending Gulsvig a notice in July of 2002, stating it was seeking "no less than $15,000, plus costs and attorneys fees per agreement" in the matter of "Color Spot, among others." The evidence Philipson offered in support of that contention, however, was a copy of the purported notice, with no proof of service, accompanied by a declaration of Attorney Jeffrey Simon, purporting to establish that the notice was served on Gulsvig by some unnamed other person. That was not sufficient evidence to establish the notice was actually served, as claimed.

But even if it were, the problem with the notice is that it specifically references only the Color Spot dispute—including the precise amount at issue in that dispute—and no others.[8] More particularly, it does not reasonably suggest that Philipson is intending to also assert other fee claims arising at different times, under entirely distinct retainer agreements. And indeed, its initial cross-complaint in this case, filed on December 22, 2003—a year and a half after the arbitration notice was purportedly served—addresses only the Color Spot dispute.

It was a full two years after that, when Philipson served its second amended complaint in January of 2006, that these other fee claims first surfaced. Under these circumstances, we cannot construe the notice that Philipson *purportedly* served on Gulsvig in 2002 as having covered those much later, and factually distinct, claims. (*Huang v. Cheng* (1998) 66 Cal.App.4th 1230, 1234 [78 Cal.Rptr.2d 550] ["the right-to-arbitrate notice is

---

[8] "Among others" is not specific.

effective only *after* an actual fee dispute has arisen."].) As a consequence, we conclude Philipson failed to demonstrate compliance with the requirements of Business and Professions Code section 6201 when it filed the expanded breach of contract and breach of covenant causes of action in its second amended cross-complaint against Gulsvig.

■■■ However, notwithstanding Philipson's failure to properly serve Gulsvig with the required arbitration notice, we conclude Gulsvig waived her right to arbitrate those distinct fee claims. Under subdivision (d) of Business and Professions Code section 6201, a client waives her arbitration rights under the statute by "commencing an action or filing any pleading seeking either of the following: [¶] (1) Judicial resolution of a fee dispute to which this article applies. [¶] (2) *Affirmative relief against the attorney for damages or otherwise based upon alleged malpractice or professional misconduct.*" (Italics added.)

In this case, Gulsvig had already filed her own cross-complaint, seeking affirmative relief against Philipson based upon various alleged breaches of professional obligations, when Philipson filed its second amended cross-complaint. As the trial court pointed out, the contract claims stated in Philipson's second amended cross-complaint may be properly used to offset the damage claims alleged against it by Gulsvig, and are thus a proper subject for inclusion in the same lawsuit. (§ 426.30.)

■■■ And finally, even if Gulsvig had not waived her rights under the MFAA, Philipson's failure to comply with its notice requirement would not mandate dismissal of the fee claims in its cross-complaint. Such dismissal is discretionary, rather than mandatory. (*Law Offices of Dixon R. Howell v. Valley* (2005) 129 Cal.App.4th 1076 [29 Cal.Rptr.3d 499].) In this case, because Gulsvig was already pursuing her own cross-complaint against Philipson in court, the goal of judicial efficiency would seemingly be furthered by allowing Philipson's cross-claims to be maintained in the same forum. Consequently, we cannot conclude the trial court abused its discretion in deciding Philipson's failure to provide arbitration notice did not warrant dismissal of its fee claims.

Other than her contention Philipson's contract claims were subject to dismissal because it failed to comply with the MFAA, Gulsvig makes no other arguments of error in the trial court's conclusion those claims were "viable." Consequently, we find no basis to reverse the court's order denying the anti-SLAPP motion to the extent of those causes of action.

The court's order denying the anti-SLAPP motion is reversed, and the matter is remanded to the trial court with directions to grant the motion with regard to Philipson's causes of action for fraud and negligent misrepresentation. We also direct the court to reconsider the issue of attorney fees under the anti-SLAPP statute in light of that changed circumstance. Gulsvig is entitled to her costs on appeal.

Sills, P. J., and Rylaarsdam, J., concurred.

A petition for a rehearing was denied August 29, 2007, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied November 14, 2007, S156370.