Filed 9/18/15  Pinnock v. Gotti CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THEODORE A. PINNOCK, | D065575 |
| Cross-complainant and Appellant, | |
| v. | (Super. Ct. No. 37-2010-00104874-CU-FR-CTL) |
| NONI GOTTI et al., | |
| Cross-defendants and Respondents. | |

APPEAL from an order of the Superior Court of San Diego County, Ronald S. Prager, Judge.  Affirmed.

Theodore Arthur Pinnock, in pro. per., for Cross-complainant and Appellant.

David Warren Peters, in pro. per., and for Cross-defendants and Respondents.

Cross-complainant Theodore A. Pinnock, a now-disbarred attorney residing in the Philippines, filed over 200 cases on behalf of cross-defendant Noni Gotti against businesses for alleged violations of the Americans with Disabilities Act (ADA), allegedly without her knowledge and consent and for disabilities from which she did not suffer.  In a declaration, Gotti explained, "For example, in at least 44 cases, he claimed that I was

discriminated against because a business did not provide Braille—I can't read Braille, have never needed it and regularly drive a vehicle."  (Fn. omitted.)

Gotti informed the State Bar of California (State Bar) about Pinnock's conduct, sought recovery from their Client Security Fund Commission for settlement funds Pinnock did not disburse to her, and filed this action against Pinnock where she asserted claims for, among other things, unprivileged use of identity and breach of fiduciary duty.

Pinnock, acting in propria persona, filed a cross-complaint against Gotti; her attorney, David Peters; and Alejandro Gutierrez.[1]  Pinnock's cross-complaint alleges, "The State Bar of California conspired with Gutierrez and Peters to disbar Pinnock." Pinnock's cross-complaint also alleges "Peters coerce[d] Gotti to commit perjury before the [StateBar and the courts to retaliate against Pinnock for practicing ADA."

Gotti and Peters filed an anti-SLAPP special motion to strike Pinnock's cross-complaint under Code of Civil Procedure[2] section 425.16.  Pinnock appeals the trial court's order granting that motion.

We affirm.  Pinnock has failed to provide an adequate record to establish the points he raises on appeal were properly preserved below and, in any event, his appellate arguments lack merit.

---

[1]     Although Gutierrez was named as a party in Pinnock's cross-complaint, he is not named in the civil case information statement and does not appear to be a party to this appeal.

[2]     Unless otherwise specified, all statutory references are to the Code of Civil Procedure.  When referring to statutory subparts within that code, the word "subdivision" is omitted.

2

FACTUAL AND PROCEDURAL BACKGROUND

A. *Gotti's Second Amended Complaint*

Gotti's second amended complaint alleges that in 2008 and 2009 Pinnock filed over 200 lawsuits using her name, "many if not all of which contained false claims . . . ." By way of example, she cited the fact that some of the lawsuits sought damages under the ADA for discrimination in failing to provide Braille at facilities when "[she] does not need Braille, cannot read Braille and has eyesight good enough to drive." Other lawsuits sought damages "for the alleged failure of the defendants to provide wheelchair accessibility, but [Gotti] does not use a wheelchair, has never required one, and regularly walks without one." Gotti alleged, "Defendants procured settlements in many if not all of these cases which have not been disclosed to Plaintiff."

Gotti further alleged she never authorized Pinnock to make these claims, and Pinnock falsified her signature on documents in these cases. She alleged, "Upon learning of the foregoing facts, Plaintiff Gotti did report this matter to the State Bar, several judges, and other officials."

B. *Gotti's Declarations in Other Actions*

After discovering Pinnock had filed these allegedly unauthorized complaints in her name, Gotti filed a declaration in at least two such cases, alerting the trial court of the alleged misconduct. For example, in a Los Angeles case entitled *Gotti v. Gingerbread Court, L.P.* (Super. Ct. Los Angeles County, 2009, No. SC100118), Gotti filed a declaration stating, among other things, "I never authorized the filing of the complaint in the above-referenced matter." She asked the court "to take all actions necessary to

3

ensure" that Pinnock is "prevented from making any further false or misleading claims . . . ." Gotti ended her declaration stating, "I ask this court to stay, suspend and/or continue any proceedings in this matter until I can secure counsel and obtain a copy of my files."

In a San Diego case entitled *Gotti v. Verna L. Disney* (Super. Ct. San Diego County, 2008, No. 37-2008-00072977-CU-CR-SC), Gotti filed a similar declaration, stating in part, "I did not provide informed consent for the filing of the complaint in the above-referenced action and do not have disabilities which would support the claims made therein. I was shocked to discover that Pinnock & Wakefield, APC has filed over 240 lawsuits in my name . . . ."

C. *Pinnock Is Disbarred*

In September 2012 Pinnock was disbarred following his nolo contendere plea to a stipulation of facts. That stipulation including findings Pinnock "filed 76 cases in Gotti's name" and "dishonestly or with gross negligence misappropriated the settlement funds received on behalf of Gotti."

In January 2012 the State Bar had suspended Pinnock in an unrelated case. There, Pinnock "stipulated that he committed an act of moral turpitude by misappropriating money held on behalf of a trust and he tried to mislead a judge."

D. *The Client Security Fund Commission Denies Gotti's Claim*

Gotti filed an application requesting $50,000 reimbursement from the State Bar's Client Security Fund for settlement funds Pinnock obtained in cases he filed under Gotti's name. In April 2013 the Client Security Fund Commission issued a tentative opinion

4

denying Gotti's claim. The tentative opinion states, "If the Commission were to reimburse under these circumstances it would be as if the Commission were sanctioning the fraudulent conduct that led to the settlements. The events in the lawsuits, according to Applicant, did not actually occur, and Applicant states that she does not suffer from the disabilities that were supposed to have been compensated by the settlement payments."

E. *Pinnock's Cross-Complaint*

After unsuccessfully seeking to strike Gotti's complaint against him with his own anti-SLAPP motion,[3] Pinnock filed what he captioned as a "First Amended Verified Counterclaim and Third Party Complaint" against Gotti, Gutierrez, and Peters.[4] Pinnock asserted claims for (1) retaliation, (2) breach of contract, (3) conspiracy (in two separate causes of action), (4) qui tam welfare fraud, (5) defamation, (6) false light, (7) intentional misrepresentation, and (8) negligent misrepresentation.

Pinnock's cross-complaint makes a number of references to reports or applications to the State Bar, and Gotti's declarations filed in superior court. The gist of the allegations is the cross-defendants conspired to commit perjury to get Pinnock disbarred.

For example, paragraph 11 alleges:

---

[3] Pinnock's unsuccessful appeal of the order denying his anti-SLAPP motion is *Gotti v. Pinnock* (April 19, 2013, D061802 [nonpub. opn.]).

[4] There are no "counterclaims" in California civil actions. "The pleadings allowed in civil actions are complaints, demurrers, answers, and cross-complaints." (§ 422.10.) The trial court treated Pinnock's pleading as a cross-complaint, and we also refer to it as a cross-complaint.

5

"[Gutierrez] and [Peters] forced Gotti to state Gotti never authorized Pinnock to file her lawsuits and never disbursed her settlement share, and forced her to state she was not disabled."

"The State Bar of California conspired with Gutierrez and Peters to disbar Pinnock because he practiced ADA . . . ."

"For health reasons and the [State] Bar's failure to provide reasonable accommodation Pinnock was compel [*sic*] to agree to a nolo disbarment related to the false Gotti charges."

In paragraph 13, Pinnock's cross-complaint contains similar allegations about State Bar proceedings, including the following:

"Due to the above conduct by Defendants, Pinnock was disbarred, publicly shamed and he was shunned . . . ."

"Defendant Peters had a long history of retaliating against ADA plaintiffs and their attorneys by using the legal process and perjured testimony . . . ."

"In this case Peters coerce [*sic*] Gotti to commit perjury before the [State] Bar and the courts to retaliate against Pinnock for practicing ADA."

The second through ninth causes of action in Pinnock's cross-complaint all begin with the phrase, "[b]ased on the alleged facts in paragraphs 8 to 13 above." In paragraph 16 of the first cause of action, Pinnock's cross-complaint alleges Gotti and Peters "filed an application with the State Bar Client Trust Fund" which they "knew was false . . . to retaliate against the Plaintiff for filing ADA claims." Pinnock also alleges "Peters knowing drafted false statements in the Gotti declaration to retaliate against Pinnock for his ADA practice."

6

F. *Anti-SLAPP Motion*

Peters, representing Gotti, and also in propria persona for himself, responded to Pinnock's cross-complaint by filing an anti-SLAPP special motion to strike under section 425.16. The record on appeal contains the moving papers, and Pinnock's declaration and accompanying exhibits in opposition. The trial court conducted oral argument, but Pinnock did not designate a reporter's transcript on appeal.

In January 2014 the trial court granted the anti-SLAPP motion, stating:

> "As to the first prong, the relevant acts fall under section 425.16 subds. (e)(1), (2) and (4). The claims are based on movants['] reporting of information to the State Bar of California, application for reimbursement from the State Bar's client trust account reimbursement fund, and/or declarations filed in court. . . . [¶] As to the second prong, Civil Code section 47 applies."

Pinnock timely appealed.

## DISCUSSION

I. *Pinnock Has Not Provided an Adequate Record on Appeal*

"Contentions or theories raised for the first time on appeal are not entitled to consideration. (*City of San Diego v. D.R. Horton San Diego Holding Co., Inc.* (2005) 126 Cal.App.4th 668, 685.) "It must appear from the record that the issue argued on appeal was raised in the trial court. If not, the issue is waived." (*Amato v. Mercury Casualty Co.* (1993) 18 Cal.App.4th 1784, 1794.)

This rule applies even where the standard of review on appeal is de novo. De novo review does not transform a reviewing court into a trial court. Even de novo review is limited to issues properly raised in the trial court and briefed in the Court of Appeal.

7

(*Bains v. Moores* (2009) 172 Cal.App.4th 445, 455; *Shamsian v. Atlantic Richfield Co.* (2003) 107 Cal.App.4th 967, 973, fn. 3.)

Pinnock's appellant's appendix contains his declaration and accompanying exhibits he filed in opposing the anti-SLAPP motion. The declaration, by its very nature, contains factual assertions, not legal points and authorities. Moreover, most of the factual assertions in Pinnock's declaration merely purport to authenticate the accompanying exhibits. Pinnock has not included in the appellant's appendix any opposition memorandum of points and authorities, and he did not designate a reporter's transcript on appeal.

The respondent's appendix contains only the moving parties' anti-SLAPP motion papers. Conspicuously absent from the record is any opposition memorandum of points and authorities filed by Pinnock.

On appeal, Pinnock raises numerous arguments, including a contention that the anti-SLAPP statute is unconstitutional. However, based on this record, it is impossible to determine whether any of Pinnock's appellate arguments were raised in the trial court.

Evidence that each appellate issue was raised below is part of Pinnock's burden of showing reversible error. This is because a "judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.) """"No procedural principle is more familiar to this Court than that a constitutional right," or a right of any other sort, "may be forfeited in criminal as well as civil cases by the

8

failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.""""" (*Keener v. Jeld-Wen, Inc.* (2009) 46 Cal.4th 247, 264, italics omitted.)

Because Pinnock has not provided either his opposition memorandum of points and authorities or a reporter's transcript of the hearing on the anti-SLAPP motion, it is impossible to determine whether any of Pinnock's appellate arguments were made below. Therefore, we are required to presume his arguments were not raised and are therefore forfeited on appeal. (See *In re Aaron B.* (1996) 46 Cal.App.4th 843, 846 ["'[A] party is precluded from urging on appeal any point not raised in the trial court.'"]; *Sommer v. Gabor* (1995) 40 Cal.App.4th 1455, 1468 ["'Ordinarily the failure to preserve a point below constitutes a waiver of the point.'"]; *Honig v. San Francisco Planning Dept.* (2005) 127 Cal.App.4th 520, 530.)

Pinnock's self-represented status does not exempt him from compliance with these well-established appellate rules. Self-represented litigants are held to the same standard as those represented by trained lawyers. "'When a litigant is appearing in propria persona, he is entitled to the same, but no greater, consideration than other litigants and attorneys. . . . Further, the in propria persona litigant is held to the same restrictive rules of procedure as an attorney.'" (*Bianco v. California Highway Patrol* (1994) 24 Cal.App.4th 1113, 1125-1126.)[5]

---

[5] Although the parties' briefs do not address the adequacy of the record, we may decide the issue without requesting further briefing. (*People v. Neilson* (2007) 154 Cal.App.4th 1529, 1532-1534 [providing an adequate record on appeal is "a procedural and substantive requirement on the part of any party . . . asserting a position on appeal"

9

In any event, as discussed below, even if we were to consider the merits of Pinnock's appellate arguments, each lacks merit.

II. *The Trial Court Properly Granted the Anti-SLAPP Motion*

A. *Legal Standards Governing Anti-SLAPP Motions*

Our review of an order granting a motion to strike a SLAPP suit is de novo. (*DeCambre v. Rady Children's Hospital-San Diego* (2015) 235 Cal.App.4th 1, 14 (*DeCambre*).)

Section 425.16(b)(1) requires a two-step process for determining whether a defendant's section 425.16 motion to strike should be granted. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.) Then, if the court finds that such a showing has been made, the burden shifts to plaintiff to demonstrate "there is a probability that the plaintiff will prevail on the claim." (§ 425.16(b)(1); *DuPont Merck Pharmaceutical Co. v. Superior Court* (2000) 78 Cal.App.4th 562, 567–568.)

Consequently, in this case, Gotti and Peters had the initial burden of establishing the causes of action against them arose out of an "act . . . in furtherance of [their] right of

and thus Government Code section 68081 does not require briefing of an issue of inadequate record].)

10

petition or free speech under the United States Constitution or theCalifornia Constitution in connection with a public issue . . . ."  (§ 425.16(b)(1).)

Section 425.16(e) specifically defines an "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" to include "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; or (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."  (§ 425.16(e).)

"In deciding whether the 'arising from' requirement is met, a court considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.'  ([§ 425.16(b)].)"  (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 79.)  The court examines the "'principal thrust or gravamen' of a plaintiff's cause of action to determine whether the anti-SLAPP statute applies."  (*Ramona Unified School Dist. v. Tsiknas* (2005) 135 Cal.App.4th 510, 519-520.)  "In the anti-SLAPP context, the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity."  (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.)  "'The anti-SLAPP statute's definitional focus is not the form of the

11

plaintiff's cause of action, but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning.'" (*DeCambre, supra*, 235 Cal.App.4th at p. 17.)

B.  *Protected Activity*

Pinnock's cross-complaint centers around cross-defendants' reporting information about him to the State Bar, an alleged conspiracy to cause the State Bar to disbar Pinnock, Gotti's application for reimbursement from the State Bar's client trust account reimbursement fund, and/or declarations Gotti filed in court about Pinnock's alleged misconduct.

For example, in his first cause of action, Pinnock alleges Peters and Gotti "filed an application with the State Bar Client Trust Fund" that was fraudulent.  Pinnock alleges Peters "knowingly drafted false statements in the Gotti declaration to retaliate against Pinnock for his ADA practice."

This theme is continued in the remaining causes of action.  The charging allegations of Pinnock's second through ninth causes of action all begin with the phrase, "based on the alleged facts in paragraphs 8 to 13 above . . . ."  Therefore, the following allegations are incorporated by reference in each of those causes of action:  Paragraph 11 alleges, "The State Bar of California conspired with Gutierrez and Peters to disbar Pinnock."

Paragraph 13 alleges, "Due to the above conduct by Defendants, Pinnock was disbarred" and "[i]n this case Peters coerce [*sic*] Gotti to commit perjury before the [State] Bar and the courts . . . ."

12

One form of protected activity under the anti-SLAPP statute is "any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law."  (§ 425.16(e).)   The gravamen of Pinnock's cross-complaint is cross-defendants' statements, conduct, and activities were false and fraudulent, and were undertaken in both the superior court and in State Bar proceedings to retaliate against Pinnock by causing the State Bar to disbar Pinnock.

Such allegations all involve protected acts under section 425.16(e).  (See *Philipson & Simon v. Gulsvig* (2007) 154 Cal.App.4th 347, 358 [initiation of a State Bar-sponsored fee arbitration proceeding is a protected activity under section 425.16].)  Indeed, Pinnock essentially concedes this fundamental issue in his brief, where he argues,  "*all* of Pinnock's causes of action against Gotti and Peters related to Gotti's alleged perjury and Peters causing the perjury."  (Italics added.)

Pinnock's appellate arguments on this point are unpersuasive.  He contends the anti-SLAPP statute is unconstitutional because it "chills" his "right to petition the government for redress of grievances" and violates "due process."  However, contrary to Pinnock's assertions, section 425.16 does not bar a person from litigating an action; it subjects to potential dismissal only those causes of action on which the plaintiff (or cross-complainant) is unable to show a probability of prevailing on the merits.  (§ 425.16(b).)  Thus, the procedure mandated by section 425.16 does not bar complaints arising from a person's exercise of his or her rights of free speech or petition for redress of grievances, but only provides a mechanism through which such complaints can be evaluated at any early stage of the litigation process.  (See *Lafayette Morehouse, Inc. v. Chronicle*

13

*Publishing Co.* (1995) 37 Cal.App.4th 855, 864-868 [Section 425.16 does not violate equal protection or right to jury trial.], superseded by statute on another ground as stated in *Paterno v. Superior Court* (2008) 163 Cal.App.4th 1342, 1350-1351.)

Citing *Flatley v. Mauro* (2006) 39 Cal.4th 299, Pinnock also argues the anti-SLAPP statute cannot be used to protect "perjury." In *Flatley,* the Supreme Court concluded that when a defendant's speech or petition activity upon which the defendant relies to support a section 425.16 motion to strike is *conceded* or shown to be illegal *as a matter of law*, such speech or petition activity will not support a special motion to strike. (*Flatley* at p. 320.) Here, Pinnock falls well short of the conclusive evidence necessary to substantiate a claim and remove a case from the ambit of the anti-SLAPP statute. The only evidence in this record that Gotti's or Peters' statements are false is Pinnock's own self-serving assertion that they are.

C. *Probability of Success*

Because the cross-defendants made the requisite showing that these claims are based on protected conduct, Pinnock was required to demonstrate a probability of prevailing on these claims. (*DeCambre, supra,* 235 Cal.App.4th at p. 22.) For this prong of the anti-SLAPP analysis, Pinnock cannot rely on the allegations of his complaint, but must present competent and admissible evidence showing a legally sufficient claim exists. (*Id.* at p. 23.)

"A plaintiff cannot establish a probability of prevailing if the litigation privilege precludes the defendant's liability on the claim." (*Digerati Holdings, LLC v. Young Money Entertainment, LLC* (2011) 194 Cal.App.4th 873, 888.) Here, in granting the anti-

14

SLAPP motion, the trial court's order states, "As to the second prong, Civil Code section 47 applies." We agree this is dispositive.

"The litigation privilege, codified at Civil Code section 47, subdivision (b), provides that a 'publication or broadcast' made as part of a 'judicial proceeding' is privileged. This privilege is absolute in nature, applying 'to *all* publications, irrespective of their maliciousness.' [Citation.] 'The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action.' [Citation.] The privilege 'is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards.'" (*Action Apartment Association, Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241 (*Action Apartment Association*).)

"The principal purpose of [the litigation privilege] is to afford litigants and witnesses [citation] the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 213 (*Silberg*).) To achieve this purpose, courts have interpreted the privilege broadly. (*Action Apartment Association, supra,* 41 Cal.4th at p. 1241.) The litigation privilege applies to defamation and to most other torts. (*Silberg, supra,* 50 Cal.3d at p. 215.) Application of the privilege does not depend on a speaker's "motives, morals, ethics, or intent." (*Id.* at p. 220.)

The litigation privilege precludes liability arising from communications made by a litigant in a judicial proceeding, such as the declarations filed by Gotti in the superior

15

court actions, or in an official proceeding, such as the State Bar proceedings. (*Lebbos v. State Bar* (1985) 165 Cal.App.3d 656, 668 [statements made in initiating and pursuing a State Bar administrative proceeding were protected by the litigation privilege].)

Superior court proceedings are clearly covered as a "judicial proceeding." (Civ. Code, § 47, subd. (b).) However, Pinnock argues the litigation privilege does not apply to the declaration Gotti filed in Los Angeles superior court case because the action was already dismissed when Gotti filed her declaration. Pinnock's assertion that the case was already dismissed is unsupported by the record. In any event, even if the case had already been dismissed, the privilege applies. Gotti's declaration informed the court of a fraud perpetrated on the court itself, and thus was necessarily made in a "judicial proceeding" to "achieve the objects of the litigation."

Moreover, the communications made by cross-defendants in connection with Pinnock's disbarment are also privileged by Business and Professions Code section 6094, subdivision (a), which provides in part:

> "(a) Communications to the disciplinary agency relating to lawyer misconduct . . . or any communication related to an investigation or proceeding and testimony given in the proceeding are privileged, and no lawsuit predicated thereon may be instituted against any person."

Therefore, because Pinnock cannot meet his burden under the second prong of the anti-SLAPP statute, the trial court correctly granted the motion.

16

DISPOSITION

The order granting Gotti and Peters's anti-SLAPP motion is affirmed. Gotti and Peters are entitled to their costs on appeal.

NARES, J.

WE CONCUR:

HUFFMAN, Acting P. J.

IRION, J.