Filed 10/3/23  Freidberg Law Corporation v. Parker CA3

# NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| FREIDBERG LAW CORPORATION et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> PORT J. PARKER, <br><br> Defendant and Appellant. | C094896 <br><br> (Super. Ct. No. 34201700218210CUBTGDS) |
| FREIDBERG LAW CORPORATION et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> HAIGHT BROWN & BONESTEEL, LLP, et al., <br><br> Defendants and Appellants. | C096138 <br><br> (Super. Ct. No. 34201700218210CUBTGDS) |

A client retained a law firm to prosecute a professional malpractice action under a contingency fee agreement.  The law firm was disqualified, and another firm took over

1

the representation.  The malpractice action settled for a substantial sum.  A successor in interest to the first law firm brought the present action, seeking to enforce an attorney's fee lien against the settlement proceeds.  The operative complaint seeks an adjudication of priority and amounts owing under the lien and alleges causes of action for intentional interference with economic expectancy, intentional interference with contract, unjust enrichment, breach of constructive trust, and money had and received against the client, a partner with the second law firm, and two other law firms that represented defendants in the malpractice action.

The client, partner, and other firms filed separate motions to strike pursuant to California's anti-SLAPP statute, Code of Civil Procedure section 425.16.[1]  The trial court rejected the motions, finding they failed to show the claims arose from protected activity.  We agree with the trial court and affirm.

## I.  BACKGROUND

A.    *The Underlying Action*

Theodore F. Hill, individually and as trustee of the Theodore F. Hill 1990 Revocable Trust dated October 3, 1990, and the Theodore F. and Priscilla P. Hill Revocable Trust established June 23, 2011 (Theodore), retained plaintiff and respondent Freidberg & Parker (F&P) in October 2011 to prosecute a professional malpractice action against an accounting firm and law firm (the underlying action).  Theodore and F&P entered into a contingency fee agreement, under which F&P would receive 40 percent of any gross recovery obtained before trial.  The agreement provided in part:  "It is understood and agreed that Attorney is assigned a lien as part of this Agreement against the Litigation and/or upon any recovery of Client, his successors, estate and/or agents by

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

2

way of compromise, settlement and/or judgment." Theodore passed away soon thereafter.

Defendant and appellant Priscilla L. Hill, individually and as co-trustee of the Theodore F. Hill 1990 Revocable Trust dated October 3, 1990, and the Theodore F. and Priscilla P. Hill Revocable Trust established June 23, 2011, and as special administrator of the Estate of Theodore F. Hill (collectively, Hill), continued prosecution of the underlying action as Theodore's successor in interest.

### 1. F&P Dissolves and FLC is Disqualified

One of F&P's name partners, Edward Freidberg (Freidberg), dissolved the firm effective January 1, 2013. Freidberg started a new firm, plaintiff and respondent Freidberg Law Corporation (FLC).[2] Hill followed Freidberg to FLC, where the representation continued pursuant to the contingency fee agreement described above.

FLC negotiated a $1.5 million settlement with one of the defendants in the underlying action in February 2014. The settlement proceeds were distributed two-thirds (or $1,000,000) to Hill, and one-third (or $500,000) to FLC, rather than the 40 percent contemplated by the contingency fee agreement.

Freidberg and FLC were disqualified for ethical violations in May 2015. Hill sought out defendant and appellant Port J. Parker (Parker). Parker had worked on the underlying action as a name partner with F&P, and was now a partner with another firm, Radoslovich, Parker, Turner, PC (RPT). RPT and Hill entered into a hybrid fee agreement. Under the agreement, RPT would charge an initial $100,000 to analyze the

---

[2] Freidberg Law Corporation has since changed its name to "Freidberg Corporation" (FC), which is not licensed to practice law in California. For convenience and unless otherwise indicated, we will refer to the Freidberg entities—F&P, FLC, and FC— collectively as FLC.

evidence and prepare for trial. Once the $100,000 was exhausted, the fee arrangement would convert to "a discounted hourly/discounted contingency [rate of 25 percent]."

### 2. The Notice of Lien

Freidberg filed a notice of lien on behalf of FLC on October 14, 2015. The notice was served on Parker, as counsel for Hill, and defendants and appellants Haight Brown & Bonesteel LLP and Perkins Coie LLP (together, the law firm defendants), as counsel for defendants in the underlying action.

### 3. Global Settlement and Ensuing Correspondence

RPT reached a global settlement in the underlying action in August 2016. As part of the stipulation for settlement, Hill agreed to " 'discharge any and all liens and other claims to any third party or organization might have or assert against the proceeds of this settlement and to hold defendants harmless as against any such liens or claims.' "

Parker notified Freidberg of the settlement by email dated September 8, 2016. Parker's email asked that Freidberg provide information concerning the basis for lien "in light of what FLC ha[d] already obtained."

Freidberg responded by letter the next day. He enclosed a copy of Hill's agreement with F&P and requested information concerning the settlement obtained by RPT, and services performed by RPT since commencing representation of Hill. With respect to the possibility of a fee dispute with Hill, Freidberg wrote: "[I]t is FLC's position that the fee dispute is not between . . . Hill and FLC, but is between [RPT] and FLC." Freidberg also sent letters to the law firm defendants. He reminded the law firm defendants of the notice of lien and advised them of FLC's contingent fee agreement with Hill.

4

### 4. Hill and RPT Retain Counsel and Establish a "Reserve"

Hill and RPT each retained counsel to represent them in connection with the emerging fee dispute with FLC. Hill retained Rudy Nolen, her counsel herein.[3] Nolen wrote to Freidberg on October 10, 2016. He disclosed the amount of the settlement and asked that Freidberg authorize the law firm defendants to release the settlement proceeds to Hill. He added: "Hill disputes your claim of lien and should any claim be asserted against her she will demand that the dispute be referred to Mandatory Fee Arbitration . . . under the Business and Professions Code."

RPT retained David Boyd. Boyd sent his own letter to Freidberg on October 10, 2016, indicating that Freidberg's rights with respect to the settlement, if any, lay against Hill, and not RPT.

Although Hill and RPT each disclaimed liability to FLC, they evidently agreed to set aside some portion of the settlement proceeds as a "reserve fund" to cover any liability associated with the lien. The record is unclear as to the amount or current disposition of the reserve fund.[4]

### 5. Sacramento County Bar Association Fee Arbitration

On November 28, 2016, Hill filed a demand for arbitration with the Sacramento County Bar Association (SCBA) under the Mandatory Fee Arbitration Act. (Bus. & Prof. Code, § 6200, et seq.) Hill's demand for arbitration sought an adjudication of FLC's right to retain the $500,000 fee the firm had already received, as well as a determination of FLC's rights under the lien.

---

[3] Nolen also represents the law firm defendants.

[4] Parker submitted a declaration in support of his special motion to strike (Parker declaration), averring that RPT and Hill "use[d] their best judgment in funding the reserve."

FLC responded to the demand for arbitration by letter to the SCBA dated January 13, 2017. FLC agreed to arbitrate the dispute regarding the $500,000 fee. However, FLC objected to any attempt to arbitrate the dispute between FLC and RPT. According to FLC, that dispute concerned "the proportional reasonable attorney's fees FLC's services produced in its three years and three months' representation of [Hill] and her late husband, as compared to the 1.3 years that [RPT] provided services to [Hill]," and was "solely between the two law firms." FLC added that it would soon be filing a complaint against RPT, but noted the firm, "will make no claim to any attorney's fees that it is entitled to from the client." As we shall see, FLC's complaint took a different tact.

B.     *The Instant Action*

FLC commenced the instant action on August 29, 2017. We need not describe FLC's initial pleading at any length.[5] Suffice to say the complaint named Hill, Parker, and the law firm defendants (among others), and asserted causes of action for (1) adjudication of lien (first cause of action, against all defendants), (2) adjudication of amount of attorney's fees to which plaintiffs are entitled (second cause of action, against all defendants), (3) intentional interference with economic expectancy (third cause of action, against all defendants except Hill), (4) intentional interference with contract (fourth cause of action, against all defendants except Hill), (5) conversion (fifth cause of action, against all defendants except Hill), (6) unjust enrichment (sixth cause of action, against all defendants except Hill), (7) money had and received (seventh cause of action, against all defendants), and (8) breach of trust (eight cause of action, against all defendants except Hill). Hill and the law firm defendants sought and obtained an ex parte order staying the matter pending the outcome of the SCBA arbitration. (Bus. & Prof. Code, § 6201, subd. (c).)

---

[5] We will discuss the operative third amended complaint in detail in a moment.

6

The SCBA arbitration panel issued a nonbinding award in March 2018. Hill apparently rejected the award, and the parties returned to the trial court (though only briefly).

### 1. *Motion to Compel Contractual Arbitration*

Hill moved to compel arbitration of the first and second causes of action for adjudication of lien and adjudication of amount of attorney's fees to which plaintiffs are entitled. The trial court granted the motion in part and ordered arbitration of the first cause of action for adjudication of lien.

### 2. *Contractual Arbitration Proceedings*

FLC and Hill proceeded to contractual arbitration in May and June 2019. The arbitrators rendered their ruling and final award in March 2020. Among other things, the arbitrators found the lien was valid and the quantum meruit value of FLC's legal services was $396,202 ($546,202 less equitable adjustments totaling $150,000).[6] FLC and Hill filed separate petitions to confirm the arbitration award. The trial court confirmed the award by separate orders dated December 10, 2020.

### 3. *Trial Court Proceedings*

FLC filed second and third amended complaints. The third amended complaint, which is the operative pleading, generally alleges that FLC spent more than three and one-half years preparing the underlying action for trial, from October 2011 through mid-May 2015. By the time RPT took the helm in June 2015, the third amended complaint says, the underlying action "could be tried before a jury without much additional work other than preparing for the trial based upon the services that had been performed."

---

[6] The arbitrators rejected Hill's requests for disgorgement of the $500,000 in fees previously paid to FLC and reimbursement of the $100,000 paid to RPT upon taking underlying action.

7

The third amended complaint alleges the underlying action settled in August 2016 for $7,158,622. The third amended complaint further alleges settlement proceeds were delivered to RPT "without any limitation on RPT's ability to use said funds and without requiring that the funds be deposited into a court protected account or other safeguarded escrow account not to be distributed until the lien rights of [FLC] have been resolved." According to the third amended complaint, the settlement proceeds were then distributed to Hill and RPT in accordance with their fee agreement. As for FLC, the third amended complaint alleges, the firm has "received no payment of any kind as a result of [its] lien rights." Thus, the third amended complaint alleges, "the DEFENDANTS and each of them, have acted in intentional violation of [FLC's] lien rights in and to the settlement proceeds and have failed to safeguard and protect [FLC's] lien rights."

The third amended complaint names defendants (Hill, Parker, and the law firm defendants), and others (including Doe defendants described as insurance carriers for defendants in the underlying action), and asserts the following causes of action: (1) adjudication of lien (first cause of action, against all defendants), (2) adjudication of pro rata lien amount between FLC and RPT (second cause of action, against all defendants except Hill), (3) intentional interference with economic expectancy (third cause of action, against all defendants except Hill), (4) intentional interference with contract (fourth cause of action, against all defendants except Hill), (5) conversion (fifth cause of action, against all defendants), (6) unjust enrichment (sixth cause of action, against Parker), (7) money had and received (seventh cause of action, against all defendants), and (8) breach of trust (eighth cause of action, against all defendants). FLC has apparently abandoned the fifth cause of action for conversion.

The third amended complaint seeks, *inter alia*, a judicial determination that FLC's lien rights have priority over the liens of Hill's successor attorneys (first cause of action), a judicial determination of the pro rata lien amount FLC should receive as a result of the settlement of the underlying action (second cause of action), damages according to proof

8

(second, third, fourth, sixth, seventh, and eighth causes of action), and imposition of a constructive trust compelling defendants to transfer FLC's share of attorney's fees obtained by reason of the settlement of the underlying action (fourth, sixth, seventh and eighth causes of action).

### 4. Special Motions to Strike

Defendants filed successive special motions to strike pursuant to section 425.16. Although defendants presented separate motions, they generally raised the same arguments. First and foremost, they argued FLC's claims for relief arose from protected activity; namely, the settlement of the underlying action and ensuing correspondence regarding the lien. Relying on *O&C Creditors Group, LLC v. Stephens & Stephens XII, LLC* (2019) 42 Cal.App.5th 546 (*O&C Creditors*), defendants argued protected settlement activities formed "the fundamental factual basis" for FLC's claims. (*Id.* at p. 570.) Hill additionally argued that FLC's claims arose from the SCBA arbitration, which was also protected activity.

Second, defendants argued FLC's causes of action lacked merit. All argued the first cause of action for adjudication of lien had been rendered moot because Hill apparently interpleaded funds sufficient to satisfy the lien.[7] All also argued FLC was not entitled to attorney's fees above and beyond the lien amount determined by the arbitration panel ($396,202), and FLC's remaining causes of action were barred by the doctrines of res judicata and collateral estoppel. Parker additionally argued he had no independent obligation to pay Hill's attorney's fees.

Parker's special motion to strike was supported by the Parker declaration, which avers, in pertinent part: "On August 30, 2016, . . . I was able to obtain a global settlement for [Hill], which was reduced to a written confidential settlement agreement and

---

[7] The law firm defendants argued the second cause of action was also moot.

9

stipulated order."  The Parker declaration does not attach a copy of the settlement agreement or say anything about its terms.

Hill and the law firm defendants' special motions to strike were supported by largely identical declarations from attorney Nolen (the Nolen declarations).  The Nolen declarations recount that RPT negotiated a settlement in the underlying action and aver, in pertinent part:  "The settlement agreement identified the 'purported lien' asserted by Freidberg and FLC and stated that [Hill] shall indemnify the defendants in any legal proceeding initiated by the Friedberg/FLC [*sic*] for a purported attorney's lien."  The Nolen declarations do not attach a copy of the settlement agreement or say anything else about its terms.[8]

FLC opposed the motions of Parker and the law firm defendants.[9]  FLC argued the third amended complaint's claims for relief arose out of Parker and the law firm defendant's failure to honor the lien, not their protected speech or settlement activity in the underlying action.  FLC also argued that Parker and the law firm defendants' reliance on *O&C Creditors* was misplaced, and there was a probability FLC would prevail on all claims for relief.

The trial court denied defendants' motions.  In separate but similar orders, the trial court distinguished *O&C Creditors,* noting defendants failed to show the settlement agreement in the underlying action was the injury causing event, rather than the failure to honor the lien.  Unlike *O&C Creditors*, which we discuss in greater detail *post*, defendants here failed to show the settlement agreement eliminated FLC's right to

---

[8] They do, however, aver that Hill filed an interpleader action and deposited "the full amount of the arbitration award ($396,202)" with the trial court.

[9] FLC apparently filed two oppositions to the law firm defendants' motions.  Regardless, the trial court treated Hill's special motion to strike as contested, and we will do the same.

recover fees. As for Hill's separate argument concerning the SCBA arbitration, the trial court found the alleged injurious acts arose from the withholding of FLC's fee, and not the initiation of the fee arbitration. Given these findings, the trial court deemed it unnecessary to consider whether there was a probability FLC would prevail on its claims for relief and denied all three special motions to strike.

These appeals timely followed.

## II. DISCUSSION

### A.    *Applicable Legal Principles and Standard of Review*

The anti-SLAPP statute provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) Section 425.16, subdivision (e) defines acts in furtherance of the rights of petition and free speech to mean, "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

A trial court presented with a special motion to strike engages in a two-step process. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one 'arising from' protected activity. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then must consider

11

whether the plaintiff has demonstrated a probability of prevailing on the claim." (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76.) To satisfy this burden, the plaintiff must demonstrate that each of the claims alleged is both legally sufficient and supported by proof upon competent evidence. (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788; *Zamos v. Stroud* (2004) 32 Cal.4th 958, 965.) " 'Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute.' " (*Haneline Pacific Properties, LLC v. May* (2008) 167 Cal.App.4th 311, 318, quoting *Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.)

"That a cause of action arguably may have been triggered by protected activity does not entail that it is one arising from such." (*City of Cotati v. Cashman, supra,* 29 Cal.4th 69, 78.) Rather, "the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech." (*Ibid.*) In determining whether a cause of action arises from protected activity, "the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).)

We review the trial court's determination on a motion to strike de novo, engaging in the same two-step process as the trial court. (*Paiva v. Nichols* (2008) 168 Cal.App.4th 1007, 1016-1017.) "We exercise independent judgment in determining whether, based on our own review of the record, the challenged claims arise from protected activity. [Citations.] In addition to the pleadings, we may consider affidavits concerning the facts upon which liability is based. [Citations.] We do not, however, weigh the evidence, but accept plaintiff's submissions as true and consider only whether any contrary evidence from the defendant establishes its entitlement to prevail as a matter of law." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067 (*Park*).) As always, appellants bear the burden of affirmatively demonstrating error. (*Balla v. Hall* (2021) 59 Cal.App.5th 652, 671.)

12

*B.*      *Arising From Protected Activity*

In the first step of the anti-SLAPP analysis, the court determines whether the plaintiff's claims arise from protected activity.  (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009 (*Bonni*).)  At this stage, the "defendant's burden is to identify what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity."  (*Ibid.*)

"A claim arises from protected activity when that activity underlies or forms the basis for the claim."  (*Park, supra,* 2 Cal.5th at p. 1062.)  Where a complaint alleges both protected and unprotected conduct, the moving defendant must "identify the acts alleged in the complaint that it asserts are protected and what claims for relief are predicated on them."  (*Bonni, supra*, 11 Cal.5th at p. 1010; see also *Park, supra,* 11 Cal.5th. at p. 1063 ["in ruling on an anti-SLAPP motion, courts should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability"].)  "Allegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute."  (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 394; see also *Area 51 Productions, Inc. v. City of Alameda* (2018) 20 Cal.App.5th 581, 594 [" 'If the core injury-producing conduct upon which the plaintiff's claim is premised does not rest on protected speech or petitioning activity, collateral or incidental allusions to protected activity will not trigger application of the anti-SLAPP statute' "].)

We note at the outset that defendants make no real effort to show how FLC's allegations concerning protected activity form the elements of any cause of action against them.  Though defendants pay lip service to the relevant first-prong standards, they do not set forth the elements of any individual cause of action in their opening briefs, nor do they attempt to explain how FLC's allegations form the essential elements of any such

13

cause of action.[10]  For this reason alone, we would be justified in concluding that defendants have failed to satisfy their burden under the first prong of section 425.16.  But even setting aside their failure to carry their burden, defendants' arguments lack merit.

### 1.    Settlement Activities

An attorney's litigation-related activities, including the prosecution and settlement of a civil action on behalf of a client, generally constitute acts in furtherance of a person's constitutional right of petition.  (See *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056 [an act in furtherance of a person's right of petition or free speech "includes communicative conduct such as the filing, funding, and prosecution"]; *O&C Creditors, supra,* 42 Cal.App.5th at p. 566 ["A settlement agreement executed in the context of active litigation is 'made in connection with an issue under consideration or review by a . . . judicial body' "].)  Although courts have taken " 'a fairly expansive view of what constitutes litigation-related activities' " (*O&C Creditors, supra,* at p. 566), "it does not follow that any claims associated with those activities are subject to the anti-SLAPP statute" (*Kolar v. Donahue, McIntosh & Hammerton* (2006) 145 Cal.App.4th 1532, 1537).  (See *California Back Specialists Medical Group v. Rand* (2008) 160 Cal.App.4th 1032, 1037 (*California Back Specialists*) ["Not all attorney conduct in connection with litigation, or in the course of representing clients, is protected by section 425.16"].)

Several cases have applied the anti-SLAPP statute's first prong in circumstances similar to those here.  (See *California Back Specialists, supra,* 160 Cal.App.4th at p. 1037; *Drell v. Cohen* (2014) 232 Cal.App.4th 24, 30 (*Drell*); *O&C Creditors, supra,* 42 Cal.App.5th at pp. 553-556.)  In *Drell*, for example, a nonparty client retained the

---

[10] Parker sets forth the elements of a single cause of action—for intentional interference with economic expectancy—in his reply brief.  However, Parker does not explain how FLC's allegations concerning protected activity form the essential elements of the cause of action.  Instead, he simply denies that he had any obligation to FLC under the lien.  That analysis is too little, too late.

14

defendants, an attorney and law firm, to represent him in a personal injury action on a contingent fee basis. (*Drell, supra,* at p. 26.) The defendants withdrew from the representation and another attorney, the plaintiff, took over. (*Id.* at pp. 26-27.) The defendants asserted an attorney's lien, informing one of the insurance carriers in the personal injury action that any payment of funds to the client was subject to a lien for fees incurred during their representation. (*Id.* at p. 27.) The plaintiff then negotiated a settlement. (*Id.* at pp. 26-27.) The insurance carrier made the settlement check payable to both the plaintiff and the defendants. (*Id.* at p. 27.) A dispute arose about entitlement to attorneys' fees from the proceeds of the settlement, and the plaintiff filed a declaratory relief action to determine the parties' rights. (*Ibid.*) The defendants responded with a special motion to strike, arguing that "the complaint 'flows entirely from the Underlying Action.'" (*Id.* at p. 28.) The trial court denied the motion and the defendants appealed. (*Id.* at p. 27.)

The Court of Appeal affirmed. (*Drell, supra,* 232 Cal.App.4th at p. 27.) The court explained: "[A] complaint is not a SLAPP suit unless the gravamen of the complaint is that defendants acted wrongfully by engaging in the protected activity. The complaint here did not allege defendants engaged in wrongdoing by asserting their lien. Rather, the complaint asked the court to declare the parties' respective rights to attorney fees. The complaint necessarily refers to defendants' lien, since their demand letter is key evidence of plaintiff's need to obtain a declaration of rights, but the complaint does not seek to prevent defendants from exercising their right to assert their lien." (*Id.* at p. 30, fn. omitted.) The court added: "None of the purposes of the anti-SLAPP statute would be served by elevating a fee dispute to the constitutional arena, thereby requiring a party seeking a declaration of rights under an attorney lien to demonstrate a probability of success on the merits in order to obtain equitable relief." (*Ibid.*)

*Drell* relied on *California Back Specialists* in which the defendant, an attorney, represented clients in separate automobile accidents. (*California Back Specialists, supra,*

15

160 Cal.App.4th at p. 1035.)  The plaintiffs, a group of medical service providers, treated the clients pursuant to medical liens on their personal injury actions.  (*Ibid.*)  The actions settled, and the attorney distributed the proceeds of the settlement without notifying the medical service providers or satisfying their liens.  (*Ibid.*)

The medical service providers sued the attorney for payment of the liens.  (*California Back Specialists, supra,* 160 Cal.App.4th at p. 1035.)  The attorney responded with a special motion to strike pursuant to section 425.16.  (*Id.* at p. 1035.)  The trial court denied the motion, and the Court of Appeal affirmed, stating:  "The anti-SLAPP statute does not apply where protected activity is only collateral or incidental to the purpose of the transaction or occurrence underlying the complaint."  (*Id.* at p. 1037.)  The court continued:  "[The medical service providers'] complaint is based on the underlying controversy between private parties about the validity and satisfaction of the liens.  These issues were never under consideration in any court or official proceedings until [the medical service providers] filed the current action."  (*Ibid.*)  The court rejected the attorney's argument that his conduct was protected activity because he distributed the settlement funds as an attorney and represented his clients in the underlying actions.  (*Ibid.*)

From these cases, we discern the principle that claims challenging the disbursement of settlement proceeds in derogation of an attorney's lien do not arise from protected activity solely by virtue of having a connection to a settlement agreement.  (*Drell, supra,* 232 Cal.App.4th at p. 30; *California Back Specialists, supra,* 160 Cal.App.4th at p. 1037.)  This principle makes sense, given that a claim based on an attorney's lien cannot be asserted until after litigation is resolved (*Mojtahedi v. Vargas* (2014) 228 Cal.App.4th 974, 977), and "a claim does not 'arise from' protected activity simply because it was filed after, or because of, protected activity, or when protected activity merely provides evidentiary support or context for the claim."  (*Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 621; see also *Kolar v. Donahue, McIntosh &*

16

*Hammerton, supra,* 145 Cal.App.4th at p. 1537 [that "[a] cause of action may be 'triggered by' or associated with a protected act . . . does not necessarily mean the cause of action *arises* from that act"].)  Thus, to satisfy the anti-SLAPP statute's first-prong, defendants must do more than simply point to the existence of a settlement agreement.

*O&C Creditors,* on which defendants rely, does not compel a contrary conclusion. (*O&C Creditors, supra,* 42 Cal.App.5th at pp. 553-556.)  In *O&C Creditors*, the client, Stephens, retained an attorney, O'Reilly, to represent him in an insurance coverage dispute with Fireman's Fund. (*Id.* at pp. 553-554.)  Stephens and O'Reilly had a fee agreement purporting to give rise to a lien on any recovery. (*Id.* at p. 554.)  Fireman's Fund was represented by the law firm Akin Gump. (*Ibid*.)

The action proceeded to trial. (*O&C Creditors, supra,* 42 Cal.App.5th at p. 554.)  The jury returned a verdict for Stephens, but the trial court entered judgment notwithstanding the verdict, awarding him nothing. (*Ibid.*)  Thereafter, O'Reilly ceased to represent Stephens. (*Ibid.*)  Another attorney, Shapirshteyn, took over the case. (*Ibid.*)  Shapirshteyn appealed the judgment notwithstanding the verdict and obtained a reversal. (*Ibid.*)  She then negotiated a $5.8 million settlement with Fireman's Fund. (*Id.* at p. 555.)  The settlement agreement expressly provided that the proceeds of the settlement would be paid solely to Stephens and Shapirshteyn. (*Ibid.*)

In the meantime, Stephens' original attorney, O'Reilly, had been forced into bankruptcy. (*O&C Creditors, supra,* 42 Cal.App.5th at pp. 554-555.)  Stephens settled an attorney fee claim with the bankruptcy trustee, but creditors—O&C Creditors— purchased the bankruptcy estate's remaining claim to the settlement proceeds. (*Id.* at pp. 554-556.)  Stephens filed a declaratory relief action against O&C Creditors. (*Id.* at p. 556.)  O&C Creditors filed a cross-complaint against Stephens (for unpaid legal fees) and against Fireman's Fund and Akin Gump (for settling the insurance coverage action in derogation of the alleged attorney's lien). (*Ibid.*)

Fireman's Fund and Akin Gump filed a special motion to strike the cross-complaint under section 425.16. (*O&C Creditors, supra,* 42 Cal.App.5th at p. 559.) The trial court granted the motion and a divided Court of Appeal affirmed. (*Id.* at p. 553.) The majority, applying the now disfavored "gravamen" mode of analysis (*Bonni, supra,* 11 Cal.5th at p. 1011), reasoned: "The gravamen of O&C Creditors' claims is that cross-defendants wrongfully deprived O'Reilly of a 40 percent contingency fee in the underlying insurance coverage dispute. O&C Creditors argues the settlement agreement is merely incidental to its claims against cross-defendants. However, O&C Creditors' allegations regarding cross-defendants' allegedly wrongful conduct stem from cross-defendants' settlement of the Stephens-Fireman's Fund litigation (without acknowledging O'Reilly's claim to attorney fees), and their disbursement of the settlement proceeds pursuant to that agreement." (*O&C Creditors, supra,* at p. 567.) Furthermore, the court explained, "cross-defendants' conduct in disbursing the settlements proceeds—i.e., carrying out the terms of the settlement agreement—cannot be neatly cleaved from the indisputably protected activity of negotiating and agreeing to the settlement itself." (*Id.* at p. 569.)

The *O&C Creditors* court distinguished *Drell, supra,* in which protected activity was evidence of the parties' rights but not the basis for any claim. (*O&C Creditors, supra,* 42 Cal.App.5th at pp. 570-571.) Unlike *Drell,* the court explained, the gravamen of O&C Creditors' cross-claims was that "Fireman's Fund engaged in wrongdoing by settling the Stephens-Fireman's Fund litigation 'around' O'Reilly's attorney lien and disbursing proceeds pursuant to the settlement agreement and in contravention of that lien." (*Id.* at p. 571.) "Far from providing mere evidentiary support for or being incidental to the challenged claims," the court continued, "the settlement agreement is the crux of cross-defendants' allegedly wrongful conduct." (*Ibid.*)

Justice Tucher, concurring in part, dissented from this part of the court's opinion. (*O&C Creditors, supra,* 42 Cal.App.5th at p. 577 (conc. & dis. opn. of Tucher, J.).) In

18

Justice Tucher's view: "This sort of attorney lien litigation has nothing to do with free speech of petitioning activity. And yet the majority announces a new rule which could easily subject all attorney lien disputes to the anti-SLAPP law's 'procedure for weeding out, at an early stage, meritless claims arising from protected [speech and petitioning] activity.' " (*Ibid.*) The majority addressed this concern in a footnote, stating: "Our holding rests on the rather unique set of facts in this case, where a settlement agreement, by its terms, expressly purports to eliminate the right of a settling party's prior attorney to recover fees." (*Id.* at p. 572, fn. 8.) "Contrary to the dissent's concerns," the majority continued, " 'all attorney lien disputes' will be unlikely to fall within the factual scenario presented here and thus the ambit of the anti-SLAPP law." (*Ibid.*) Thus, the *O&C Creditors* court concluded the anti-SLAPP statute's first prong had been met. (*Id.* at p. 574.)

Defendants insist *O&C Creditors* compels reversal. They argue the trial court attached outsized importance to the footnote explaining that the majority's holding was based on a "unique set of facts." They suggest the trial court overlooked similarities between the settlement agreement in *O&C Creditors* and the settlement agreement here. They caution that the trial court's interpretation of *O&C Creditors* could enable plaintiffs to avoid or subvert the anti-SLAPP statute through artful pleading. None of these arguments address the question prescribed by *Bonni*: whether the allegations of protected activity "supply the elements" of any cause of action, "or merely provide context." (*Bonni, supra,* 11 Cal.5th at p. 1012.)

Parker and the law firm defendants argue representing their respective clients in the underlying action, negotiating a settlement, and communicating with Freidberg were all protected activities.[11] We do not disagree. (See generally Civ. Code, § 47 [codifying

---

[11] Parker expands on this theme at length, arguing the only acts he was alleged to have undertaken were protected ones; namely, representing Hill in the underlying action, negotiating a settlement on her behalf, and engaging in post-settlement communications

19

the litigation privilege]; *Rusheen v. Cohen, supra,* 37 Cal.4th at p. 1056; *O&C Creditors, supra,* 42 Cal.App.5th at p. 567.)  But again, that is not the relevant inquiry.  To satisfy the first prong, defendants must show the allegations of protected activity supply the elements of FLC's causes of action.  (*Bonni, supra,* 11 Cal.5th at p. 1012; see also *Park, supra,* 2 Cal.5th at p. 1064.)  This they fail to do.

Rather than address the relevant legal standard, Parker and the law firm defendants offer strained comparisons to *O&C Creditors.*  They point to paragraph 32 of the third amended complaint, which alleges, in part:  "PLAINTIFFS are informed and believe and therefore allege that the insurance carriers DOES 10 to 15, for all DEFENDANTS, who participated and contributed to the ultimate settlement, agreed to and blatantly violated, as set forth above, PLAINTIFFS['] lien rights."  According to Parker and the law firm defendants, the quoted language amounts to an allegation that they "all 'agreed' as part of the settlement" to dishonor FLC's lien.  But paragraph 32 does not purport to describe the terms of the settlement agreement and does not constitute a concession that the agreement "expressly purports to eliminate the right of a settling party's prior attorney to recover fees," as was the case in *O&C Creditors.*  (*O&C Creditors, supra,* 42 Cal.App.5th at p. 572, fn. 8.)  Parker and the law firm defendants' attempt to hoist FLC on its own petard fails.

The law firm defendants additionally argue the settlement agreement here is comparable to the one in *O&C Creditors* because it requires Hill to indemnify others in proceedings brought to enforce FLC's "purported lien."  However, the law firm defendants have failed to provide information sufficient for us to meaningfully compare the two settlement agreements.  What's more, the information provided in the Nolen declarations does not support the conclusion that the settlement agreement here

---

with Freidberg.  However, the third amended complaint does not suggest that any of these acts were wrongful.  Rather, the third amended complaint clearly alleges that Parker and the other defendants caused harm to FLC by failing to honor the lien and pay its fees.

20

"expressly purports to eliminate the right of a settling party's prior attorney to recover fees." (*O&C Creditors, supra,* 42 Cal.App.5th at p. 572, fn. 8.)

That the settlement agreement characterizes FLC's claim of right as a "purported lien" does not establish that the agreement purports to eliminate FLC's right to recover fees. Neither does the presence of an indemnification provision. At most, these details suggest the parties to the settlement agreement (whoever they may have been) contemplated that the lien may be disputed. They do not establish that the settlement agreement itself purported to extinguish FLC's right to recover fees. As such, the law firm defendants—and indeed, all defendants—have failed to show that protected settlement activity was the "crux" of their allegedly wrongful conduct. (Cf. *O&C Creditors, supra,* 42 Cap.App.5th at p. 571.) Defendants' attempt to analogize this case to *O&C Creditors* is unavailing.

Based on our independent review of the entire record we conclude, as the trial court did, that defendants have failed to show that any of FLC's causes of action arise from protected settlement activity. This conclusion marks the end of the road for Parker and the law firm defendants, whose special motions to strike were solely based on settlement-related conduct and communications. That leave us with Hill, who raises an additional argument based on the SCBA arbitration, to which we now turn.

2. *SCBA Arbitration*

Hill separately argues her special motion to strike should have been granted because FLC named her as a defendant in this case in retaliation for filing the SCBA arbitration, which was also protected activity. This argument suffers from the same flaw as the last; nowhere does Hill explain how allegations concerning the SCBA arbitration supply the elements of any cause of action against her. (*Bonni, supra,* 11 Cal.5th at p. 1012.) Hill's failure to address the relevant first-prong standard is hardly surprising, considering the third amended complaint contains no such allegations.

21

Hill emphasizes the timing of the instant action, noting that FLC only brought suit after she initiated the SCBA arbitration. Hill also observes that Freidberg initially expressed an interest in keeping her out of the fee dispute, but later changed direction and named her as a defendant in the instant action.[12] However, the filing of an action in response to or in retaliation for protected activity does not mean the action arose from that activity for purposes of the anti-SLAPP statute. (*Navellier v. Sletten, supra,* 29 Cal.4th at p. 89; *Bergstein v. Stroock & Stroock & Lavan LLP* (2015) 236 Cal.App.4th 793, 804.) "[T]he critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech." (*City of Cotati v. Cashman, supra,* 29 Cal.4th at p. 78.) As before, Hill misses the "critical point." (*Ibid.*)

Hill directs our attention to *Philipson & Simon v. Gulsvig* (2007) 154 Cal.App.4th 347 (*Gulsvig*), which she claims the trial court erroneously distinguished. *Gulsvig* does not help Hill. There, the defendant, Gulsvig, retained the plaintiff, a law firm, to collect a judgment. (*Id.* at p. 352.) The law firm obtained a settlement in the amount of $85,000, of which $15,000 was designated as attorney's fees. (*Ibid.*) The law firm handed $70,000 over to Gulsvig and made clear its intention to keep the remaining $15,000 for itself. (*Id.* at. pp. 352-353.)

Gulsvig disputed the law firm's right to the $15,000 and requested arbitration under the Mandatory Fee Arbitration Act. (*Gulsvig, supra,* 154 Cal.App.4th at p. 353.) The law firm, for its part, questioned Gulsvig's right to retain any part of the settlement funds. (*Ibid.*) Furthermore, the law firm said, another entity, Campbell, was asserting its own claim to the settlement funds. (*Ibid.*) The law firm asked Gulsvig to return the

---

[12] The record suggests that defendants' counsel told Freidberg he was legally required to name Hill.

$70,000 she had already received.  (*Ibid.*)  Gulsvig refused, and the law firm filed a complaint against her on Campbell's behalf.  (*Ibid.*)

Gulsvig responded with a cross-complaint against the law firm, alleging causes of action for breach of fiduciary duty, negligence, breach of contract, and conversion.  (*Gulsvig, supra,* 154 Cal.App.4th at p. 353.)  The law firm returned fire with a cross-complaint against Gulsvig.  (*Id.* at pp. 354-355.)  The operative second amended cross-complaint asserted causes of action for breach of contract, breach of the covenant of good faith and fair dealing, fraud, and misrepresentation.  (*Id.* at pp. 355-356.)  As relevant here, the law firm alleged Gulsvig breached her retainer agreement by refusing to allow the firm to keep the $15,000.  (*Id.* at p. 355.)

Gulsvig filed a special motion to strike pursuant to section 425.16.  (*Gulsvig, supra,* 154 Cal.App.4th at p. 356.)  The trial court denied the motion and the Court of Appeal reversed.  (*Id.* at p. 352.)  On appeal, Gulsvig argued the law firm's allegation she breached her retainer agreement by refusing to pay the $15,000 in fees "must be read as a complaint about her initiation of the State Bar arbitration proceeding —because that is the *manner in which she manifested* her refusal."  (*Id.* at p. 360.)  The Court of Appeal elaborated:  "Gulsvig points out that this is not a case in which she was ever in possession of the disputed $15,000.  If she were, she could theoretically have breached her contract by simply refusing to pay it over to [the law firm].  That would have been nonpetitioning activity.  But because [the law firm] was at all times in possession of the disputed funds, her alleged 'refusal to pay' required her to take some affirmative steps to dispute [the firm's] right to retain those funds.  And she did that by initiating the State Bar arbitration."  (*Ibid.*)  "Under these circumstances," the court concluded, "we must concur with Gulsvig that the breach of contract and breach of covenant claims in [the law firm's] second amended cross-complaint are based, at least in part, on Gulsvig's petitioning activity."  (*Id.* at p. 361.)

23

Hill purports to find support for her anti-SLAPP motion in *Gulsvig*. However, the third amended complaint does not seek damages for the SCBA arbitration. Nor does the third amended complaint assert any cause of action for breach of contract or breach of the implied covenant of good faith and fair dealing, such that the SCBA arbitration could be said to have manifested her refusal to pay, and thus supplied an element of the cause of action. And, though Hill may not have taken possession of all of the disputed funds, this was not a case in which "she could not 'refuse' to pay [the lien] other than" by initiating arbitration. (*Gulsvig, supra,* 154 Cal.App.4th at p. 361.) This was, instead, an unprotected failure to pay, just as Gulsvig's failure to pay would have been unprotected had she had control of the disputed funds, and not been obliged to initiate arbitration to manifest her refusal. (*Id.* at pp. 360-361.) Hill can draw no comfort from *Gulsvig*.

Having concluded that the conduct underlying FLC's third amended complaint was not protected under the first prong of the anti-SLAPP statute, we need not reach the second prong of the analysis as to whether FLC has established a probability of prevailing on its causes of action.

## III.  DISPOSITION

The orders denying the special motions to strike are affirmed.  Freidberg Law Corporation and Freidberg & Parker, LLP shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

/S/

_____
RENNER, J.

We concur:

/S/

_____
ROBIE, Acting P. J.

/S/

_____
MAURO, J.